WYRICK et al. v. CUMBERLAND TRUST CO.—66 S. W. (2d) 1045.

Eastern Section. July 1, 1933.

Petition for Certiorari denied by Supreme Court, December 15, 1933.

Ayres, Broughton & Parkey, of Knoxville, for appellant.
Thomason & McMillan, of Knoxville, for appellee.

SENTER, J. The original bill was filed in this cause by complainant for the purpose of enjoining a suit at law instituted by the defendant against complainant in a justice of the peace court for Knox county, which suit was brought to enforce payment of an alleged deficiency arising out of the foreclosure by the defendant of a trust deed on property owned by the complainants, after applying the amount realized at the foreclosure sale to the debt secured therein.

The original bill alleged, in substance, that the foreclosure sale was held at the instance and request of complainants for the purpose of eliminating certain materialmen's liens and workmen's liens which had attached to the property after the same had been sold by the complainant on terms, and while the purchaser thereof was in possession under a deed executed by complainant, with lien retained to secure deferred payments and also a mortgage to further secure the deferred payments, the trust deed held by defendant being a prior lien on the property. It was further alleged in the bill that, at the request of complainants, the defendant proceeded to advertise said property for sale under the trust deed to secure a loan of $2,500 made by

defendant to complainant, on the property, consisting of a farm of about 67 acres located in the Seventh civil district of Knox county, Tennessee, and that at said sale the defendant was to bid in the property at a nominal price, and by this method clear the property of the liens claimed for materials, etc.; that, after complainants had regained possession of the property by a foreclosure of their trust deed, they had negotiated a sale of this farm to a Mr. Ragan and wife, for the alleged consideration of about $4,500; that the contract for the purchase of said property had been signed by Mr. Ragan and by the complainant; that Ragan was putting in certain property owned by himself and wife as a part of the consideration, and pending an investigation of the title by the attorneys for Ragan, that the papers were placed in escrow; that the attorneys representing Mr. Ragan reported that the property was incumbered by the liens referred to, but agreed to advise Ragan and wife that, if the defendant foreclosed its prior trust deed, this would clear the property of these liens so that the Ragans could proceed with the purchase. The bill alleges that the foreclosure sale by the defendant was a mere formality and was for the purpose alone of relieving the property of these liens, and to the end that complainants could consummate the sale of the property to the Ragans; that subsequently the Ragans failed and refused to go forward with the transaction, and the papers held in escrow were delivered to Ragan; that the trustee in the trust deed had executed the trustee's deed to the defendant, for the recited consideration of $1,000, the amount at which the defendant had bid in the property at the sale; that it was the agreement and understanding between the parties, prior to and at the time of the foreclosure sale, that the trustee would make title directly to a purchaser procured by complainant, and the debt of complainants to the defendant be satisfied. The bill further alleged that, after the sale to Ragan and wife had fallen through, the defendant claimed to be the owner of said property as the purchaser thereof at the foreclosure sale, and instituted the suit in a justice of the peace court to recover the deficiency.

The bill further alleged that complainants were engaged in the real estate business in Knoxville, and that complainants T. J. Wyrick, J. B. Malcom, and J. O. Mintz, formed a partnership in January, 1930, for the purpose of handling and collecting the rentals from the defendant, Cumberland Trust Company, and to be made the exclusive real estate agents for the sale of all property for the defendant, Cumberland Trust Company. The bill alleges that the Cumberland Trust Company is a corporation, and engaged largely in making loans and taking second mortgages on real estate in Knoxville and vicinity; and then had a large number of loans secured by second mortgages, and was the owner of numerous pieces of rental property in the city of Knoxville. The bill alleges that the complainants also made many appraisals of property owned by the de-

fendant, or property in which the defendant had an interest, and that these appraisals were made by complainants at the request of the defendant and for the benefit of the defendant, and that the defendant was indebted to complainants for appraisal fees aggregating about $3,000, and filed a statement of the same as an exhibit to the bill. Complainants further alleged that the defendant was further indebted to complainants for commissions on real estate sales amounting to about $2,500, and that these amounts were then due and owing to complainant by defendant, and that, after applying a sufficient amount thereof to fully pay the mortgage debt on the 67-acre farm, defendant would still be due and owing to complainants about $3,000 for fees and commissions.

The bill further alleged that defendant had charged a usurious rate of interest on the mortgage debt, and had collected interest at the rate of one per cent per month, and that complainants were entitled to recover this item also of the defendant in this suit.

The defendant filed an answer, admitting that it held the trust deed on the 67-acre farm, and that the same had been foreclosed at the instance and request of the complainant for the purpose of eliminating and relieving the property of the lien and to the end that complainants could proceed to sell the property to Ragan and wife, and admitted that the complainants had not consummated the sale to Ragan and wife; and admitted that at the foreclosure sale the defendant became a purchaser of the property, and was at all times ready to have the trustee convey the same to any purchaser of complainants if its debt was satisfied. The answer admitted that the defendant had entered into an agreement and arrangement with the complainants, operating under the firm name of Wyrick, Malcom & Mintz, by which it turned over to complainant the exclusive right to rent its various holdings of real estate, and to collect the rents thereon, and for which service agreed to pay to complainant commissions at the rate of 5 per cent of the rents collected; and also agreed to give to complainants the first chance to make sales of its real estate holdings in Knoxville, and to pay the usual commission of 5 per cent on all sales made. The answer denied that the defendant agreed to give to complainants the exclusive sales agency of all its real estate holdings, but only agreed to give to complainants the first right or chance to make the sales. The answer denied that it was indebted to complainants for any amount on account of making appraisals; and denied that there had ever been any agreement whereby complainants were to make appraisals of real estate for the defendant, and denied that it was indebted to complainant for any amount whatever for making appra'sals as alleged in the bill. The answer admits that, while complainants did, from time to time, suggest the probable sale price of property in which the defendant was interested, these suggestions were made with the view of placing a sale price on the property, and as a guide

for complainants in their endeavor to find purchasers for the property, which privilege had been given to them, and alleges that no suggestion was ever made that there would be any charge in this connection, and no claim had ever been made for any such alleged services until the filing of the bill. The answer admits that complainants did find purchasers for some of defendant's property, but alleges that for all such transactions the defendant allowed and fully paid the usual commissions, either in cash or as a credit on indebtedness due the defendant. The answer denies that the correct amount due it on its note is $2,500, but alleges that the correct balance due on the note is $1,820.85, which is the net amount after crediting the original amount of the note with commissions on certain pieces of property enumerated, plus interest and attorney's fees, as provided in the face of the note, and after deducting the amount of $1,000 realized for the property at the foreclosure sale. The answer is also filed as a cross-bill, which seeks to have a decree against the complainant for the alleged balance due on said note of $1,820.85, including interest and the attorney's fees, and also seeks to recover of T. J. Wyrick and wife, Blanche M. Wyrick, the sum of $773 alleged to be the amount due and owing by T. J. Wyrick and wife to the defendant.

Upon these issues proof was taken by depositions by the respective parties. At the hearing of the cause the chancellor held and decreed that the foreclosure proceedings by defendant were for the use and benefit of the complainants, and that the title to said premises under the trustee's deed, now held by the defendant, is held in trust for the use and benefit of the complainants; and decreed that the conveyance be canceled, set aside, and for nothing held, and that the mortgage or trust deed be restored to its former status, and be declared in full force and effect, and to accomplish such purpose the legal title in and to said premises is divested out of said Cumberland Trust Co., "and vested in the said W. A. DeGroat, Trustee, to the same manner and extent as if said trustee's deed dated December 22, 1930, . . . had never been executed."

The court further held and decreed that the complainants are entitled to certain credits upon the indebtedness secured by said mortgage or trust deed, as follows:

"(a) A credit of $157.50 as of March 5, 1930; (The same being the commission due from the defendant to the complainants for the sale of certain property belonging to the defendant, and located on East Fifth Avenue, Knoxville, Knox county, Tennessee, said sale having been made to one J. W. Walker, and the defendant in its answer having admitted that the complainants are entitled to such credit).

"(b) A credit as of July 10, 1930, in the sum of $100 (the same being commission due from the defendant to the complainants rendered by them in the sale to a Mrs. Tindell of certain property be-

longing to the defendant, and located at Fountain City, Knox county, Tennessee, the defendant in its answer having admitted that complainants are entitled to such credit).

"Thus making the balance secured by such trust deed the sum of $2,242.50, together with interest thereon from and after April 20, 1930, the date when interest on said indebtedness was last paid, said interest amounting to $347.58, which added to the above makes the aggregate amount of the indebtedness secured by such trust deed the sum of $2,590.08."

The chancellor further held and decreed on the subject of compensation for appraisals, as follows:

"The court is further of the opinion, and doth accordingly find and adjudge, that the complainants at the special instance and request of the defendant, rendered to the defendant valuable services in appraising large numbers of properties in and around Knoxville, Knox county, Tennessee, and that such technical or professional services so rendered to the defendant at its instance and request were reasonably worth at the usual and customary charges in effect at the time and place such services were rendered the sum of $2,767, which said sum, although long past due, is wholly unpaid."

The chancellor further held and decreed that the complainants in their original bill admitted that they were indebted to the Cumberland Trust Company on account of other transactions in the sum of $533; that the defendant is entitled to a credit of this amount, and then decreed that the complainants have and recover of the defendant Cumberland Trust Company the sum of $2,234, with interest thereon from and after April 13, 1931, the date of the filing of the original bill in the cause, said interest amounting to $212.23, making an aggregate amount which complainants shall have and recover of defendant, $2,446.23.

The chancellor further decreed that said amount of $2,446.23 be credited to the amount decreed to be due from complainants to the defendant, secured by the trust deed on the farm hereinbefore referred to, leaving a net balance still due and owing to the defendant on said farm loan, the sum of $143.83, and decreed that the payment of said sum of $143.83 by complainants to the defendant, with interest upon said sum from and after the entering of the decree, would satisfy in full the indebtedness secured by said trust deed.

The court further found and decreed that the averments of the original bill relative to commissions on sales of real estate by complainant "are fully met by the averments of the answer, and are not sustained by the proof, but that the averments of the answer in respect thereto are sustained by the proof, and that the complainants are entitled to no recovery whatsoever from the defendant for commissions upon sales of real estate except as to such items as the de-

fendant admits in its answer are due to complainants, and which have been fully covered hereinabove.''

The court further held and decreed that the complainants were not entitled to any recovery on the account of the alleged usury, the decree stating: ''. . . Complainants in their original bill having not been sufficiently explicit in their averments with reference to such alleged usury.'' The court further held and decreed that the defendant is not entitled to any relief under its cross-bill, and decreed a dismissal of the same.

· The complainants excepted to so much of the decree as adjudges that are not entitled to recover of the defendant the sum of $255 or any other sum as usury. The complainants further excepted to so much of the decree as declines to give them a money judgment against the defendant for the sum of $2,446.23, but on the other hand requires them to credit said sum upon indebtedness secured by the mortgage or trust deed, and prayed an appeal to this court from the decree of the chancellor on those two items.

The defendant prayed an appeal from the following items of the decree:

''(1) The foreclosure proceedings held on September 22, 1930, was a friendly proceeding, and that the title to the premises therein described was taken by the Cumberland Trust Company and held by it in trust, for the use and benefit of the complainant, and that the title to said premises is now held by Cumberland Trust Company, in trust for the use and benefit of complainants herein; and,

''(2) The conveyance from W.. A. DeGroat, Trustee, to Cumberland Trust Company be cancelled, set aside and for nothing held and the mortgage be restored to its former status and declared to be in full force and effect, and to accomplish such purpose the legal title in and to said premises is divested out of Cumberland Trust Company and vested in said W. A. DeGroat, Trustee, and,

''(3) The balance secured by said trust deed being in the amount of $2,242.60, together with interest from and after April 20, 1930, in the sum of $347.58, making a total aggregate amount of the indebtedness secured by said trust deed the sum of $2,509.08, and,

''(4) The complainants at the special instance and request of the defendant, rendered to defendant valuable services in appraising a large number of properties in and around Knoxville, Knox county, Tennessee, said services being reasonably worth the sum of $2,767, and,

''(5) The complainants have and recover of the defendant the sum of $2,234 together with interest thereon from and after April 13, 1931, and,

''(6) Said amount of $2,446.23 be credited upon the amount due from complainants to Cumberland Trust Company and secured by said mortgage, thus making the net amount still due upon the mort-

gage indebtedness the sum of $143.83, and upon the payment of said sum by complainant to defendant, together with interest upon said sum from and after the entering of this decree, will satisfy in full the indebtedness secured by said trust deed, or mortgage, and,

"(7) The defendant is entitled to no relief under its cross-bill and same is dismissed, the Cumberland Trust Company excepts and prays an appeal to the next term of the Court of Appeals, at Knoxville."

Both parties have filed assignments of error and briefs in support thereof. We will first take up and dispose of the assignments of error filed by the complainants. These assignments are directed, first, to the action of the court in holding and decreeing that the averments of the original bill relative to commissions on sales of real estate by complainants are fully met by the averments of the answer and not sustained by the proof, and in holding that complainants are entitled to no recovery from the defendant for commissions upon sales of real estate except as to such items as the defendant admits in its answer are due to complainant. Second, that the chancellor erred in holding that the complainants were not entitled to recover of defendants the sum of $225 or any other sum as usury, because the averments in the original bill with reference to such usury were not sufficiently explicit.

We have examined the record carefully, and fully concur in the conclusion reached by the learned chancellor that complainants are not entitled to any recovery against the defendant for alleged commissions on sales of real property, except as to such items as the defendant admitted in its answer, and as decreed by the chancellor. This appellant frankly admits in the brief that they entertained serious doubts as to the merits of this assignment of error, and very little insistence is made that there was any error by the chancellor on this question.

We are also of the opinion that the chancellor reached the correct conclusion with reference to the alleged usury charge by the defendant on the $2,500 loan secured by the trust deed on the farm property. In addition it appears that a part of the alleged usury was the usual service charge for renewing the note. It results that the assignments of error by the complainants are overruled.

We come now to consider the assignments of error of the defendant, Cumberland Trust Company.

The first assignment by this appellant is directed to the holding and decree of the chancellor that the foreclosure proceeding was a friendly proceeding, and in decreeing that the trustee's deed, as a result of said foreclosure, be declared null and void, and title taken by the defendant Cumberland Trust Company was for the use and benefit of the complainants, and that same was now held by the defendant in trust for the use and benefit of the complainants, and that

the original mortgage should be restored to its former status, and to be declared in full force and effect.

The second and third assignments challenge the holding and decreeing of the chancellor in holding and decreeing that complainants were entitled to recover the sum of $2,767 by way of fees or compensation for making appraisals of real property for the defendant; and in holding and decreeing that, when these credits are given, there only remains a balance due and owing defendant from complainants the sum of $143.83, and that by paying said amount that it would fully satisfy the indebtedness secured by the trust deed.

These assignments of error may be considered and disposed of collectively.

There is practically no conflict in the evidence with reference to the facts and circumstances surrounding the foreclosure of the trust deed on the farm land. The defendant admits that the foreclosure was the result of a request made by the complainant in order to get the title in condition that it would be approved by the attorneys for the Ragans, who had entered into negotiations with complainants for the purchase of this farm. It was desirable by the complainants and the defendant that the sale of the property to the Ragans be consummated. In this situation, it was deemed expedient to have the trustee in the trust deed advertise and sell the property, and that it would be bid in by the defendant at a nominal sum and would then be conveyed to the purchaser of complainants, the Ragans. For reasons hereinbefore referred to, complainants failed to complete the sale to the Ragans, and that trade fell through. After several months, the complainants being unable to procure another purchaser, the defendant, claiming title by virtue of the trustee's deed, executed pursuant to the foreclosure, sued in a justice of the peace court for the difference between the price at which it was bid in, and the balance of the debt, or, in other words, sought a deficiency judgment. Whereupon, the complainants in this suit filed the bill to enjoin the suit at law in the justice of the peace court.

On the merits of the controversy between the parties, after a careful investigation of the pleadings, exhibits, and the evidence, we are of the opinion that the real facts may be summarized and stated as follows:

For some months prior to January, 1930, Mr. Mintz, who was a real estate and rental agent in Knoxville, had represented the defendant in collecting rents, and also in making sales, and otherwise serving the defendant, Cumberland Trust Company. It appears that Cumberland Trust Company was a corporation doing business in Knoxville and vicinity, and engaged in making loans on real estate, and rather specialized in second mortgage loans. It did not conduct a real estate business, but rather engaged in loaning money on real estate. It held a large number of first and second mortgages on

numerous pieces of real estate in and about Knoxville, and was about to take over other real estate loans which operated as an expansion to its business. In January, 1930, it was suggested by either Mintz or Mr. Dulin, president of Cumberland Trust Company, that it would be expedient for Mintz to associate with him a partner in handling the rental collections for the defendant and in selling such real estate for the defendant as the defendant may desire or require. This resulted in the formation of the partnership composed of Wyrick, Malcom & Mintz. Mr. Dulin, as the president and general manager of the defendant, Cumberland Trust Company, agreed that he would turn over all of the rental matters of his company to the complainants, and would also give to complainants the first right or chance to make sales of real estate for the defendant, and agreed to pay to the new firm commissions at the rate of 5 per cent on rentals collected and usual compensation or commissions on all real estate matters negotiated by the complainants for the defendant. The complainants, after forming the partnership, seemed to have devoted practically all their time and attention to the business of the defendant, in collecting rents, advising as to second mortgages or protecting second mortgages, and in making sales of real estate for the defendant.

It also appears that the defendant made prompt and proper settlements with the complainants on commissions for collecting the rents, and commissions for real estate sales as found by the chancellor. The real controversy now between the parties and to be determined by this court is with reference to the question of compensation for alleged appraisals.

On this subject both Col. Wyrick and Mr. Mintz testified that the firm was frequently called upon by the defendant to make appraisals of numerous pieces of real estate in Knoxville and environments, and did make many appraisals at the request of Mr. Dulin. They also testified as to the usual rate of compensation for this character of service, and especially as provided by the Knoxville real estate board. It would appear that the matter of making appraisals is a separate and distinct service rendered by efficient realtors in connection with the real estate business, and the real estate board had adopted a scale of fees for this character of service.

Mr. Dulin testified, in substance, that his company was engaged exclusively in making real estate loans on first and second mortgages, and that it frequently became expedient to buy in property on which his company held a second mortgage, or to otherwise acquire the property so as to protect its second mortgage, and that this occurred frequently in the course of its business. Mr. Dulin further testified that he encouraged the formation of the partnership, because Mr. Mintz, who had done considerable work for his company, seemed to need assistance. He also testified that he arranged with this new firm

to represent his company in collecting all rents, and gave the exclusive rental collections to the complainant; that he also agreed and did give to the complainant the first chance to sell real estate for his company. He testified that, soon after the firm was organized by complainants, Mr. Mintz suggested that it would be well to have Col. Wyrick become more familiar with the various pieces of real estate owned by the defendant company, and suggested that on the next day, Sunday, they drive around and see this property. Pursuant to that suggestion, Mr. Dulin, Col. Wyrick, and Mr. Mintz got into an automobile on Sunday and spent the most of the day driving to the various pieces of property. He testified that they looked at about sixty different pieces of property, either owned by the defendant company, or in which the defendant company was interested. He further testified that, on that trip, neither of the complainants left the automobile; that they would simply drive up to a piece of property and would stop the automobile, in most instances not over two or three minutes, and seated in the automobile they would look at the property and discuss the probable rental value of each piece of property, and also its probable sale value, or what complainants could get for the property if placed with them for sale. He testified that there was never any agreement that these inspections constituted an appraisal of the property, or that it was in contemplation that any appraisal charge would be made. He further testified that it was to the mutual interest of his company and of the complainants that they would look this property over to ascertain its probable rental value and probable sale value in the event the same would be turned over to the complainants to handle. He testified that there was but one real appraisal made, and that on one occasion he did procure Col. Wyrick to accompany him on a trip to look at what is referred to as the "Oak Ridge Property," for the purpose of getting Col. Wyrick's opinion as to the expediency of making a $12,000 loan on that property, and that Col. Wyrick's firm was entitled to compensation for that service, and that he did compensate him to the amount of $36. He testified that that was the only appraisal ever made by either of the complainants, other than a casual visit or inspection as was made on the Sunday referred to. Col. Wyrick testified on cross-examination that he thought there were about twenty different pieces of property inspected on the Sunday that he accompanied Dulin and Mintz. He did not claim to have gone into the houses or to have made any special inspection with the view of ascertaining a definite appraisal of either of the pieces of property viewed on that day, yet it appears from the pencil memorandum that was subsequently filed that these properties inspected on that Sunday were included in the itemized statement for which complainants claimed to be entitled to appraisal fees at the rate as provided by the schedule of the Knoxville board of realtors.

We have examined the depositions of Col. Wyrick and Mr. Mintz closely to discover if there was ever any agreement or any suggestion made at any time that complainants expected to make a separate charge for making appraisals of these various properties, and we fail to find that there was ever a suggestion made to Mr. Dulin until the bill was filed in this cause that any such claim was being made. We think one of the most potent circumstances in connection with this alleged claim is that Col. Wyrick admitted that, although he kept the books for his firm, he never made any charge on the books for any fee in connection with the appraisals. His evidence is far from convincing that it was in contemplation of complainants that this charge would be made. Another circumstance that goes far to reflect that this claim for compensation or fees for alleged appraisals was in the nature of an afterthought, after the suit was filed in the justice of the peace court, is the fact that, although this firm was dissolved in July, 1930, and was at all times in bad financial circumstances, and was needing money badly, no claim was ever made on the defendant for compensation for these services, until after the justice of the peace court case was brought by the defendant to recover the alleged deficiency judgment. In fact, no claim was ever really made against the defendant for alleged fees or commissions or compensation for making appraisals until it was brought forward in the original bill filed in this cause, which was not filed until April 13, 1931, although Col. Wyrick testified that shortly before the justice of the peace court suit was instituted by the defendant he was called upon by Mr. Dulin to make some payment on an indebtedness that he personally owed to the defendant, and in that conversation he did claim that the defendant owed the complainant some amount for services rendered, but he did not claim to have informed Mr. Dulin of the exact nature of the claim that he was making. He testified that Mr. Dulin on that occasion showed some feeling or anger, and proceeded to institute the suit in the justice of the peace court. This was not until after several months after the dissolution of the firm of Wyrick, Malcom & Mintz.

Without going into a full analysis of all the evidence on the subject, we cannot escape the conclusion that whatever services in the nature of suggesting values to any of the property that may have been made, and were in fact made by members of complainants' firm to Mr. Dulin, were in connection with determining rental values, the collection of which had been intrusted to complainants by the defendant; and, also, the expediency or inexpediency of protecting second mortgages held by defendant, where the complainants expected to sell the property as real estate agents for the defendant. It is admitted that Mr. Mintz, prior to the formation of the firm of Wyrick, Malcom & Mintz, rendered a similar service to the defendant, and for

which no charge was ever made, that is, a charge for making appraisals.

We cannot, therefore, agree to the conclusions reached by the learned chancellor that, under the facts and circumstances as disclosed by this record, complainants were entitled to the recovery allowed by the chancellor as fees for making these appraisals. We are of the opinion that, at the time any such service was rendered by the complainants, or either of them, to the defendant, it was not in contemplation of either party that a separate charge would be made. We are of the opinion that the facts and circumstances surrounding this alleged claim clearly negative any idea or intention upon the part of complainants to make a charge for that particular class of services, when it appears that it was at all times made in connection with property that the parties intended to be handled by complainants, either in making sales or collecting the rents, and was to that extent to the mutual interest that these casual inspections be made.

We are, therefore, of the opinion that the learned chancellor was in error in allowing the complainants credit for the $2,767, as aggregate fees for making appraisals. We are further of the opinion that the chancellor reached the correct conclusion on all other matters and questions presented on this appeal, that is, with reference to the status of the title to the farm. We are of the opinion that the foreclosure sale was intended for the benefit of the complainant, and, since the sale of the property to the Ragans or to any one else by complainant was never consummated, that the trustee's deed executed by the trustee to the defendant should be canceled, and the trust deed restored to its original status to secure the note, interest, and attorney's fees as originally secured by the trust deed, after allowing the credits as found by the chancellor on the real estate sales commissions on the items admitted by the answer and as found by the chancellor.

To the extent as above set out, with reference to the allowance as a credit to complainant of the claim for appraisal fees, the decree of the chancellor is reversed, and in all other respects affirmed. The cause will be remanded to the chancery court of Knox county for the entering of such decree or order as may be necessary to carry out the decree as herein modified.

The cost of this appeal will be paid by complainant appellants and surety on the appeal bond.

Heiskell and Anderson, JJ., concur.